FILED
2008 Oct-24  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LEW MITCHELL, D.M.D.,** }<br>}<br>**Plaintiff,** }<br>}<br>v. }<br>}<br>**BLUE CROSS & BLUE SHIELD OF** }<br>**ALABAMA, INC.,** }<br>}<br>**Defendant.** } | **Case No.: 2:07-CV-134-RDP** |

## MEMORANDUM OPINION

The present posture of this three year-old litigation is the product of a complex and circuitous history. Since this case has been in this court, the court has held conferences for the purposes of clarifying Dr. Lew Mitchell's ("Plaintiff" or "Mitchell") claims and Defendant's defenses which resulted in a narrowing of the claims and parties through amendment of the pleadings. Nevertheless, the court has a duty to continuously examine whether it has jurisdiction and, as discussed more fully below, has requested that the parties address federal question jurisdiction under each of the three, independent grounds originally advanced by Defendant when it removed this case from state to federal court.[1]

In light of the most recent amendment to the complaint, the following state law claims remain pending in this case—Count I: Breach of Contract; and Count II: Constructive Contract/Unjust Enrichment. (*See* Doc. #21). Plaintiff Mitchell asserts claims (on behalf of a purported class of "in-network" dental providers) alleging that Defendant Blue Cross and Blue Shield of Alabama, Inc.

---

[1]Although in its brief Defendant notes that removal occurred over three years ago, that is of little moment here. Indeed, the only issue raised by that fact is whether the court should have identified the questions about its jurisdiction earlier in this case.

("Defendant" or "BCBS") engaged in a pattern and practice of billing procedures that violate its in-network provider agreement with Mitchell (and the other in-network providers).

On July 31, 2008, the court ordered the parties to brief the issue of whether the court has jurisdiction over these remaining claims. (Doc. #24). As noted in that Order, the court has an independent and continuing obligation to ensure that it has subject-matter jurisdiction over actions pending before it. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction ... ."); *Univ. of S. Alabama v. Am. Tobacco Inc.*, 168 F.3d 405, 410 (11th Cir. 1999) (stating that, in the context of removal, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking").

The parties were directed to brief the following issues relevant to whether the court has jurisdiction over the remaining claims:

1. The effect of *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) on the existence of federal question jurisdiction in this case under the Federal Employee Health Benefit Act ("FEHBA"), bearing in mind that the United States is not a party to this action;

2. How 28 U.S.C. § 1442(a)(1) is applicable to this action; and

3. Whether the contracts at issue in this case, *i.e.*, the provider agreements between Plaintiff and Defendant, are governed by ERISA such that ERISA preempts Plaintiff's state law claims. (*See* Doc. #24).

In asking the parties to address these issues, the court was not seeking to revisit the issue of the propriety of the initial removal of this action. When this case was removed, it was a materially different case. *See The Alabama Dental Association v. Blue Cross and Blue Shield of Alabama,*

2007 WL 25488 (M.D. Ala. 2007). The Alabama Dental Association ("the ADA") and James Sanderson, who purported to represent an entirely different class of plaintiffs than Plaintiff Mitchell, are no longer parties to the case. The remaining claims by Plaintiff Mitchell are based on direct contractual relationships with BCBS. The claims originally asserted included claims by Sanderson on behalf of dental providers based upon patient assignments, where some of the patients were employed by the federal government. Thus, some of the claims advanced by Sanderson were based upon assignments under health benefit plans regulated by the federal Office of Personnel Management ("OPM") and/or the FEHBA. Based upon the claims originally asserted (specifically including those asserted by former-plaintiff Sanderson), the Honorable Mark E. Fuller, Chief Judge of the Middle District of Alabama, determined that removal was proper. Defendant's removal was premised on three grounds, two of which Defendant's Reply Submission in response to the court's July 31, 2008 Order concedes "no longer apply" to the remaining claims in this case. (Doc. #27 at 2) ("FEHBA and ERISA preemption no longer apply ... ."). Therefore, the question presently before the court, albeit raised *sua sponte*, is whether the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1), provides federal jurisdiction over the remaining claims in this case.

Defendant's argument that the Federal Officer Removal Statute applies is based upon its contention that the OPM closely "superintends" the FEHBA. Plaintiff asserts that some of the services that were rendered by the putative in-network provider plaintiffs–and which they allege resulted in claims that were improperly coded–were rendered to persons insured under FEHBA plans. Thus, Defendant argues that Federal Officer Removal is applicable because of OPM's regulation of those plans. Defendant also relies on the Eleventh Circuit's unpublished opinion in

*Anesthesiology Assoc. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Florida,* 133 Fed.Appx. 738 (11th Cir. 2005) ("*AAOT*") to support its Federal Officer Removal argument.

Plaintiff argues that the claims in this case do not arise out of any OPM regulated conduct. He alleges that the putative in-network plaintiffs' claims in this case are (1) based upon a breach of BCBS's contracts with the in-network providers themselves and (2) not based upon patient assignments under plans regulated by OPM. Plaintiff further alleges that Defendant used an improperly designed computer program to minimize reimbursement under the in-network providers' agreements with BCBS by "downcoding" or "bundling" claims so that they are reimbursed at a lower rate. Plaintiff also asserts that Defendant BCBS has failed to show that it acted pursuant to federal authority when it allegedly improperly coded claims. Accordingly, Plaintiff argues that *AAOT* is not controlling because it is not binding under the Eleventh Circuit's Internal Operating Procedures, and in any event, is distinguishable because the claims in that case differ from those asserted here: the *AAOT* claims were based on patient assignments rather than provider agreements with BCBS.

Although arguably it may not have been necessary to his decision, Judge Fuller analyzed that issue. Judge Fuller determined that there was no "federal jurisdiction over Mitchell's claims because he seeks relief solely in connection with his contractual arrangements with BCBS." *The Alabama Dental Association,* 2007 WL 25488 at *8. For the reasons discussed below, the court agrees with Judge Fuller but will conduct its own analysis of the issue.

The Federal Officer Removal Statute "'allows removal of any civil or criminal action against "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office."'" *The Alabama Dental Association,* 2007 WL 25488 at *6 (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting 28 U.S.C. §

1442(a)(1))). "Removal is proper under § 1442(a)(1) when (1) the defendant advances a colorable defense arising from its duty to enforce federal law, and (2) the defendant establishes a 'causal connection between what the officer has done under asserted official authority' and the plaintiff's action." *The Alabama Dental Association, 2007 WL 25488 at \*7* (citing *Magnin*, 91 F.3d at 1427 (quoting *Willingham*, 395 U.S. at 405)). "[T]he mere existence of and/or compliance with federal regulations does not bring a removing private party within the federal officer removal statute." *Dunevant v. Healthcare USA of Missouri, LLC*, 2008 W.L. 4066384 \*5 (E.D. Mo. 2008) (quoting *Watson v. Philip Morris Cos., Inc.* 127 S.Ct. 2301, 2306 (2007)); *see also Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey*, 518 F.Supp.2d 128, 133 (D. N.J. 2007) (quoting *Ala. Dental Ass'n*, 2007 WL 25488 at \*7 (citing *Kennedy v. Health Options, Inc.*, 329 F.Supp.2d 1314, 1318 (S.D. Fla. 2004))). "That is so even if the regulations are highly detailed and even if the private firm's activities are highly supervised and monitored." *Dunevant*, 2008 W.L. 4066384 at \*5 (citing *Watson,* 127 S.Ct. at 2308).

As the court noted in *Orthopedic Specialists of New Jersey*, there is a split of authority on the application of the Federal Officer Removal statute which is largely driven by the nature of the claims at issue. 518 F.Supp.2d at 133.[2] Based upon the original Complaint in this action, Judge

---

[2] Compare *Transitional Hosps. Corp. of La., Inc. v. La. Health Service & Indem. Co.*, No. Civ.A. 05-2221, 2005 WL 2037553, \*3 (E.D. La. Aug.16, 2005) (rejecting federal officer removal jurisdiction over negligent misrepresentation claim); *Haller v. Kaiser Found. Health Plan of the Nw.*, 184 F.Supp.2d 1040, 1045 (D. Or. 2001) (rejecting federal officer removal jurisdiction over malpractice and negligence claims); *Cyr v. Kaiser Found. Health Plan of Tex.*, 12 F.Supp.2d 556, 568 (N.D. Tex. 1998) (rejecting, without discussion, federal officer removal jurisdiction over negligence, negligent concealment, tortious interference, and Texas commercial bribery statute claims); *Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F.Supp. 726, 740-41 (S.D. Tex. 1997) (rejecting federal officer removal jurisdiction over false advertising and Texas insurance law claim), with *Anesthesiology Assocs.*, No. 03-15664, slip op. (11th Cir. 2005) (permitting federal officer removal jurisdiction over assignment of benefits claim); *Ala. Dental Ass'n*, 2007 WL 25488 at \*7 (permitting federal officer removal jurisdiction over assignment of benefits claim, but rejecting removal over claim made

Fuller held that Defendant could establish federal officer removal jurisdiction over former-plaintiff Sanderson's claims, but that the same rationale did not apply to establish federal jurisdiction over current-plaintiff Mitchell's claims. *Ala. Dental Ass'n*, 2007 WL 25488 at *7-8. Judge Fuller stated that the critical distinction was that, whereas former-plaintiff Sanderson relied on patient assignments for some of his claims, current-plaintiff Mitchell complains of Defendant's uniform billing procedures. Judge Fuller held that "federal jurisdiction was properly based on the Federal Officer Removal Statute where a health care provider brought suit *pursuant to a patient assignment against a health care plan*." *Ala. Dental Ass'n*, 2007 WL 25488 at *8 (citing *AAOT*, 133 Fed.Appx. 738; *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F.Supp.2d 1347, 1351 (M.D. Ala. 1999) (emphasis added). The rationale is that where the claims are based upon a patient assignment under a federal benefits program, the insurer's claims decisions are governed by the contract negotiated and interpreted by OPM. The duty to pay for health services is determined by the terms of the plan negotiated by OPM, of which the assigning patient is a member. *Id.; see also AAOT, at p.4.* In contrast, current-Plaintiff Mitchell's claims are based upon *his own* contract made directly with Defendant BCBS. OPM is not a party to that contract and there is no evidence before the court that it was involved in the negotiation or interpretation of that contract. This court agrees with Judge Fuller that "[a] suit between these two private parties on this subject matter does not touch on the procedures or regulations dictated by OPM." *Id.*

---

"solely in connection with [Plaintiff's] contractual arrangements with [Defendant]", but nevertheless permitting supplemental jurisdiction over the latter); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F.Supp.2d 1347, 1351 (M.D. Ala. 1999) (upholding jurisdiction over health care provider's claims based on Federal Officer Removal Statute).

*Orthopedic Specialists of New Jersey*, 518 F.Supp.2d at 133-34.

The only alleged oversight by OPM which Defendant relies upon to establish Federal Officer Removal jurisdiction is a clause in Defendant's standard FEHBA contract with OPM. (Doc. #25 at 5). That clause, specifically 2002 CS 1039 § 1.9(b)(2)(i)(B), directs that "Carrier shall develop and apply a quality assurance program ... [that] shall include procedures to address ... Coding Accuracy." (Ex. A to Notice of Removal). This clause further provides a "required standard" that 98 per cent of claims be coded accurately. Defendant asserts that its coding practices, which are challenged by Plaintiff Mitchell, are performed "under the oversight and supervision" of OPM because they were implemented in compliance with this clause in Defendant's contract with OPM. Defendant further argues that its coding practices are under the direction of a federal office because OPM directed it to establish a quality assurance program and specified certain standards with which Defendant was required to comply. The contract terms on which Defendant relies are not highly detailed, and there is no evidence that Defendant's activities under it were highly supervised or monitored. *Dunevant*, 2008 W.L. 4066384 at *5 (citing *Watson,* 127 S.Ct. at 2308). The specified contract terms are more akin to a simple regulation with which Defendant must comply. This is not the type of "direct and detailed control" by a federal officer required to establish Federal Officer Removal jurisdiction. *Orthopedic Specialists of New Jersey PA*, 518 F.Supp.2d at 135. "The upshot is that [even] a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Watson*, 127 S.Ct. at 2308. Because the court finds that Defendant has merely shown that it is the subject of a fairly simple "regulation" imposed by OPM, which does not include any specification

regarding the manner of compliance, it concludes that Defendant has failed to present evidence justifying the continuing application of Federal Officer Removal jurisdiction.[3]

Alternatively, Defendant argues that if this court finds that there is no longer a basis for federal jurisdiction over the remaining claims in this case, it was still properly removed and, therefore, the court should continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). Of course, the court agrees with Defendant that this case was originally properly removed. The court also readily acknowledges that it has the discretion to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(a). But the flip side is true as well: it also has the discretion to decline to continue to exercise jurisdiction because all claims over which the court had original jurisdiction have now been dismissed.[4] 28 U.S.C. § 1367(c)(3).

Defendant urges the court to retain supplemental jurisdiction because it has already "invested substantial judicial resources in familiarizing itself with the underlying facts and legal issues in this case." (Doc. #27 at 10). However, federal district courts routinely decide to decline to exercise supplemental jurisdiction after the close of discovery and after entering summary judgment on all federal claims. The Eleventh Circuit has even "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate*

---

[3] In light of Defendant's failure to establish the second prong of the test for Federal Officer Removal jurisdiction, *i.e.* "a 'causal connection between what the officer has done under asserted official authority' and the plaintiff's action," it is unnecessary to address the first prong, *i.e.* whether "defendant advances a colorable defense arising from its duty to enforce federal law." *The Alabama Dental Association*, 2007 WL 25488 at *7 (citing *Magnin*, 91 F.3d at 1427 (quoting *Willingham*, 395 U.S. at 405)).

[4] Pursuant to section 1367(c), a district court has discretion to decline to exercise supplemental jurisdiction in four situations: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

*Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Here, the parties' conduct of discovery and work toward resolving this case will benefit them when litigating in state court.

Having determined that there is no longer a basis for federal jurisdiction over Plaintiff's remaining state law claims, the court declines to exercise supplemental jurisdiction over those claims. Therefore, those claims are due to be remanded to the Circuit Court of Montgomery County, Alabama. A separate order in accordance with this Memorandum Opinion will be entered.[5]

**DONE** and **ORDERED** this ____24th____ day of October, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[5]This case is remanded to the Circuit Court for Montgomery County. Under § 1447(d) a case is to be remanded "to the State court from which it was removed." 28 U.S.C. § 1447(d); *see also Taliaferro v. Goodyear Tire & Rubber Co.*, 265 Fed.Appx. 240, 244 (5th Cir. 2008); *Bloom v. Barry*, 755 F.2d 356, 358 (3d Cir. 1985) ("'Remand' means 'send back.' It does not mean 'send elsewhere.'"). "Whether a transfer from that forum ... might be appropriate is a question for the state courts to resolve." *Taliaferro*, 265 Fed.Appx. at 244.